# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        v.                                           CR NO. 06-227 (JMF)

TROY ANTOINE HOPKINS,

        Defendant.

## DETENTION MEMORANDUM

This matter comes before me upon the application of the United States that the defendant be detained pending trial. After a hearing, the government's motion was granted, and this memorandum is submitted to comply with the statutory obligation that "the judicial officer shall─include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

## FINDINGS OF FACT

1.      In its indictment, the Grand Jury charged Troy Antoine Hopkins ("Defendant Hopkins") along with 13 other individuals with engaging in a conspiracy to sell phencyclidine (PCP). The conspiracy ran for approximately two years, from sometime in 2004 until at least July 27, 2006.

2.      Proceeding by proffer, the government stated that the conspiracy was headed by Darnell Jackson and Defendant Hopkins.

3.      Flight records obtained by the government show that members of the conspiracy, including defendant, would fly in and out of Long Beach Airport on Jet Blue airlines. Long Beach was chosen for its proximity to Compton - an area known as a major source

of PCP - and for its perceived lax security.

4.    Members of the conspiracy would then purchase PCP from Tony Hilt or members of a branch of the Los Angeles gang the Crips known as the "Mona Park Crips." The PCP was usually purchased in one gallon quantities with a total of three gallons purchased per trip.

5.    The PCP was then given to couriers, usually young females, for transport back to the Washington metropolitan area. The PCP was smuggled back to Washington in lotion, shampoo or mouthwash bottles.

6.    The conspiracy coordinated at least 20 round-trip flights between the Washington, DC, metropolitan area and the Los Angeles metropolitan area during the period in question. Defendant himself made 11 flights to California between 2004 and 2006.

7.    In May of 2006, the FBI obtained a court-ordered wiretap of Darnell Jackson and Defendant Hopkins. The FBI intercepted calls between Darnell Jackson and defendant about the business of purchasing and selling PCP.

8.    On May 22, 2006, couriers Tinesha Adams and Lanika Franklin took a late-night Jet Blue flight from California to Dulles Airport. Intercepted conversations made clear to the FBI who the couriers were. In the early morning of May 23, 2006, the FBI stopped the two couriers at Dulles and searched their baggage, discovering mouthwash bottles that contained a substance that tests later confirmed was PCP. At that time, each woman was carrying one gallon of PCP.

9.    Following this incident, wiretapped conversations between the defendant and Darnell Jackson became more heated. Defendant Hopkins indicated that he was going to "bounce

2

[the situation] off" his father, a former police officer. Defendant Hopkins dispatched a cousin to take the two female couriers - Adams and Franklin - to a hotel. The women were passed among others involved in the conspiracy until they arrived at Myrtle Beach, South Carolina. There, wiretaps indicate that it was determined that the women should not be killed because they were not lying about the May 23, 2006, FBI seizure of PCP at Dulles.

10.    Following this seizure of PCP, officers made a number of controlled buys of PCP from agents of Defendant Hopkins in the Washington, DC, and suburban Maryland areas.

11.    On July 20, 2006, Defendant Hopkins's father discussed with defendant a concern that he was being followed by FBI agents. Therefore, defendant was aware of being wanted.

12.    Following an August 1, 2006, "takedown" securing of multiple warrants, FBI officials discovered a bottle of PCP and a handgun concealed under a shrub next to Defendant Hopkins's parents' home.

13.    Video evidence indicates that Defendant Hopkins also used the woods near his parents' home in suburban Maryland to store PCP and firearms.

14.    A search of defendant's parents' home revealed at least 6 firearms, including an Uzi, and $14,000 in cash stored in defendant's father's bedroom.

## REASONS FOR DETENTION

An examination of the factors required to be considered by 18 U.S.C. section 3142(g) compels the conclusion that there is clear and convincing evidence that defendant's release on any condition or combination of conditions will not reasonably assure the safety of the

community and his detention is, therefore, appropriate.

### The Statutory Standard

Defendants who are charged with an offense for which a term of imprisonment of 10 years is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801 *et seq*.), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951 *et seq.*), or the Maritime Drug Law Enforcement Act (46 U.S.C. §§ 1901 *et seq.*) are eligible for pretrial detention. 18 U.S.C. § 3142(f)(1)(C). If there is probable cause to believe that the defendant committed an offense for which a maximum term of imprisonment of 10 years or more is prescribed in those three statutes, it is presumed that there is no condition or combination of conditions which will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e). In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer is to consider:

1.    The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

2.    The weight of the evidence;

3.    The history and characteristics of the person, including

    a.    His character, physical and mental condition, family ties, employment, financial resources, length of residence in the community and community ties;

    b.    Past conduct, history relating to drug or alcohol abuse;

    c.    Criminal history;

    d.    Record concerning appearance at court proceedings;

    e.    Whether, at the time of the current offense or arrest, the person was on

4

probation, parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State or local law;

4.      The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142.

An examination of these factors compels the conclusion that there is clear and convincing evidence that defendant's release on any condition or combination of conditions will not reasonably assure the safety of the community and his detention is, therefore, appropriate.

**The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.**  The crime clearly involves a narcotic drug – namely, participation in a conspiracy to distribute more than one kilogram of PCP.

**Defendant's character, physical and mental condition, family ties, employment, financial resources, and length of residence in the community.**  Defendant Hopkins is a longtime resident of the Washington, D.C. area.  He is single and has one child.  His official residence is with his parents and child in Lanham, Maryland. However, evidence indicates that the defendant kept apartments with females in several cities, including Atlanta and the Los Angeles area. Additionally, the Government claims that four of its nine witnesses will testify that Defendant Hopkins had recently moved his distribution headquarters to California.

Defendant has not filed taxes for seven years, so his income is unknown. Evidence offered by defendant's family indicates that he has been promoting shows and parties in the Los Angeles area, but any income from this work has not been reported.

**The weight of the evidence.**  The weight of the evidence is overwhelming.  Airline records indicate that Defendant Hopkins traveled on at least eleven occasions to California and

returned to the Washington area. Wiretap records implicate Defendant Hopkins as a lead conspirator in the business of purchasing and selling PCP, recruiting and instructing young people - including his nephew Troy Chavious - into the PCP business, and in the coordination of couriers to transport PCP from California to the Washington, DC, metropolitan area. The Government intends to produce nine witnesses, all of whom are informants who will testify to Defendant Hopkins's involvement in the conspiracy.

**History relating to drug or alcohol abuse.** There is no information available on whether Defendant Hopkins has a history relating to drug or alcohol abuse.

**Record concerning appearance at court proceedings and prior criminal record.** Defendant Hopkins has four prior convictions, all in Prince George's County, Maryland. The most recent of these is an August 22, 2003 conviction for 2nd Degree Assault. The second is a Possession with Intent to Distribute a Controlled Substance conviction entered on April 28, 2000. The third is also a Possession with Intent to Distribute a Controlled Substance conviction entered on April 28, 2000, this one relating to an earlier arrest. The oldest conviction is also for Possession with Intent to Distribute a Controlled Substance entered on November 3, 1995.

**Whether on probation or parole at the time of the present offense.** Defendant Hopkins received a three-year probation sentence for his 2nd Degree Assault conviction of August 22, 2003. Thus the events in question likely took place while Defendant Hopkins was on probation in Prince George's County,Maryland.

## CONCLUSION

A weighing of all the pertinent facts compels the conclusion that Defendant Hopkins should be detained pending trial. He was an active participant in a national conspiracy to sell

more than one kilogram of PCP and wiretap and flight records further implicate him as a coordinator of this conspiracy. This evidence clearly shows that he is at the upper echelons of a sophisticated national drug conspiracy, and the Government is prepared to offer nine corroborating witnesses on this matter.  The importation into this community of large quantities of this dangerous drug endangers this community in a most obvious way.  Defendant Hopkins has proffered nothing to rebut the presumption of his dangerousness created by the Bail Reform Act. The weight of the evidence is, however, strongly against the defendant. I therefore find by clear and convincing evidence that there are no conditions or combination of conditions I could set which would reasonably assure the safety of the community.  I will, therefore, order Defendant Hopkins detained without bond pending trial.

_____/s/_____
**JOHN M. FACCIOLA**
**UNITED STATES MAGISTRATE JUDGE**

**June 1, 2007**