UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, )
)
)
)
v. ) Criminal Action No. 06-227-02 (RBW)
)
TROY HOPKINS, )
)
　　　　　　　Defendant. )
)
)

FILED

AUG  1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## ORDER

Currently before the Court in this multiple-defendant phencyclidine ("PCP") trafficking case is defendant Troy Hopkins's Motion to Reconsider Denial of Counsel's Appearance ("Motion"). At the status conference held in this matter on July 13, 2007, the Court (1) denied the oral motion of the defendant's attorney, Cary Clennon, to withdraw from this case; and (2) vacated the entry of the appearance of Eduardo Balarezo as new counsel for the defendant. In accordance with the oral orders issued at that status hearing, and for the reasons set forth below, the Court denies the defendant's motion for reconsideration.

### Background

Troy Hopkins, along with thirteen co-defendants, was indicted in this case on July 27, 2006, on charges of, inter alia, conspiracy to distribute and to possess with intent to distribute one kilogram or more of PCP. Indictment at 2. By the beginning of August 2006, many of Hopkins's co-defendants had already been arrested and were being held without bond pending trial. See Docket Entry ("D.E.") #s 4-9. Hopkins, by contrast, allegedly fled the jurisdiction to avoid capture, remaining a fugitive for nearly a year. See Government's Opposition to New

Counsel for Defendant Hopkins and to Any Lengthy Continuance ("Govt.'s Opp.") at 1-2. Thus, as the government contends, "[w]hile Hopkins deliberately evaded arrest, the remaining defendants have sat incarcerated and awaiting trial." Id. at 2.

On May 10, 2007, the Court scheduled this matter for a jury trial beginning on September 26, 2007, and lasting, in all probability, for at least four to six weeks. See May 10, 2007 Minute Entry. Shortly thereafter, on May 19, 2007, Hopkins was arrested at a gambling casino near Los Angeles, California. Motion at 2; Govt.'s Opp. at 2. Hopkins was then transported back to this judicial district for arraignment before Magistrate Judge John Facciola. Motion at 2. At Hopkins's May 30, 2007 arraignment, Magistrate Judge Facciola appointed Cary Clennon to represent Hopkins upon Hopkins's oral motion and pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A et seq. (2000). See May 30, 2007 Minute Entry. To the Court's knowledge, at no time since his appointment has Mr. Clennon expressed any reservations about proceeding to trial on the current trial date or given any indication that he will not adequately be prepared to proceed with trial as scheduled.

On July 5, 2007, Mr. Balarezo entered an appearance on behalf of the defendant. D.E. #149. Representing that he would not be prepared to go forward with a September 2007 trial date, Mr. Balazero then moved to continue the trial from its scheduled date or, in the alternative, to sever Hopkins's case from that of his co-defendants. Motion to Extend Motions Deadline and to Continue Trial Date ("Def.'s Mot. to Continue") at 5. Mr. Balazero further stated that, "due to a congested trial schedule, and out of an abundance of caution," the trial should be rescheduled sometime in the middle of 2008. Id. at 3. The Court denied Balazero's motion in open court on July 13, 2007.

2

## Analysis

In requesting that the Court reconsider its denial of his motion and its subsequent vacation of Mr. Balazero's appearance as his attorney in this case, the defendant argues that his Sixth Amendment right to counsel, which "encompass[es] the right to be represented by the attorney [of his choice]," Motion at 4, is best served by permitting Mr. Balazero to appear as his attorney, even if such appearance would require that the defendant's trial (as well as the trials of his various co-defendants) be delayed for many months, see id. at 6-10. In response, the government contends that "[t]he delay and/or severance that would be caused by allowing Attorney Balazero to [appear] as Hopkins' counsel is not reasonable . . . under the facts and circumstances of this case." Govt.'s Opp. at 2. Because (1) Mr. Clennon is willing and able to proceed with the representation of Hopkins on the September 2007 trial date; (2) it would not be in the interests of justice to subject Hopkins's co-defendants to the substantial delay entailed by permitting Mr. Balazero's appearance; and (3) severance of Hopkins's trial from that of his co-defendants would result in the unnecessary duplication of the presentation of evidence in a separate trial, as well as the expenditure of significant additional time and resources to essentially try this case a second time, the Court agrees with the government.

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. One component of this right, as the Supreme Court has recently reaffirmed, "is the right of a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, ___ U.S. ___, ___, 126 S. Ct. 2557, 2561 (2006) (citations omitted); see also Powell v. Alabama, 287 U.S. 45, 53 (1932) (stating that "a defendant should

be afforded a fair opportunity to secure counsel of his own choice"). Such a right, however, "is circumscribed in several important respects," Gonzalez-Lopez, ___ U.S. at ___, 126 S. Ct. at 2561 (internal quotation marks and citation omitted), and, in particular, "must be balanced against the judicial system's interest in expeditious proceedings," United States v. Shepherd, 102 F.3d 558, 564 (D.C. Cir. 1996) (internal quotation marks and citations omitted); see United States v. Vallery, 108 F.3d 155, 157 (8th Cir. 1997) (stating that "[t]he right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice") (citation omitted); United States v. Rankin, 779 F.2d 956, 958 (3d Cir. 1986) (stating that "[a] defendant will not be permitted to subvert judicial proceedings or cause undue delay by designating a certain lawyer"); cf. Morris v. Slappy, 461 U.S. 1, 13 (1983) (reversing a circuit court's determination that the trial judge had "violated the [defendant's] right to assistance of counsel by arbitrarily refusing a continuance that would have permitted [a particular attorney] to try the case"). Indeed, the District of Columbia Circuit has specifically held that the Sixth Amendment "does not give a criminal defendant an absolute right to a continuance [of trial] to allow [the] counsel [of his choice] to prepare." United States v. Poston, 902 F.2d 90, 96 (D.C. Cir. 1990). "The public has a strong interest in the prompt, effective, and efficient administration of justice," and thus "the right to counsel cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of their inherent powers to control the same." Id. (internal quotation marks and citations omitted); see Vallery, 108 F.3d at 157 (stating that "[o]nly an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates [a defendant's Sixth

4

Amendment right to choice of counsel]") (internal quotation marks, citation, and emphasis omitted).

In <u>United States v. Burton</u>, 584 F.2d 485 (D.C. Cir. 1978), the District of Columbia Circuit "set[] forth a number of factors that a trial court may consider in ruling on a motion for a continuance based upon an asserted need for time for counsel to prepare more fully." <u>Poston</u>, 902 F.2d at 96-97. These factors include:

> the length of the requested delay; whether other continuances have been requested and granted; <u>the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the [C]ourt</u>; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; <u>whether the defendant contributed to the circumstance which gives rise to the request for a continuance</u>; <u>whether the defendant has other competent counsel prepared to try the case</u> . . .; whether denying the continuance will result in identifiable prejudice to [the] defendant's case, and, if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may apply in the context of any particular case.

<u>Id.</u> (quoting <u>Burton</u>, 584 F.2d at 490-91) (emphases added). Here, the balance of these factors clearly weighs in favor of denying the continuance that would be necessitated by a withdrawal of Mr. Clennon's appearance and the substitution of Mr. Balazero as the defendant's attorney. While the Court has no reason to believe that the request for a continuance occasioned by the defendant's desire for new counsel was specifically made for reasons that were impermissibly "dilatory, purposeful, or contrived," it is undeniable that the willful choice of the defendant to flee this jurisdiction in August 2006—an act which is not disputed by the defendant, and which spurred "a nationwide manhunt" before he was finally apprehended in the Los Angeles area in May 2007—has certainly "contributed to," if not outright created, "the circumstance which gives rise to" the comparatively short amount of time afforded the defendant to acquire counsel of his choice prior to the scheduled trial date of September 2007. <u>Id.</u> (internal quotation marks and

citation omitted). Had the defendant surrendered himself to the United States Marshal's Service at some earlier date, the selection of Mr. Balazeros as his counsel would not have posed the significant scheduling problems that it now does. Furthermore, it is plain that neither a continuance nor a severance of the defendant's case from that of his co-defendants would serve "the judicial system's interest in expeditious proceedings," Shepherd, 102 F.3d at 564 (internal quotation marks and citations omitted), or the public's "strong interest in the prompt, effective, and efficient administration of justice," Poston, 902 F.2d at 96 (internal quotation marks and citation omitted). Postponement of the trial into mid-2008, as would be required if Mr. Balazeros was permitted to become Hopkins's attorney and this case were to proceed to trial in its current posture, would substantially prejudice Hopkins's co-defendants—many of whom have been held without bond pending trial for nearly a year, and all of whom are represented by counsel who will be prepared to try this case in September 2007—through no fault of their own, while the severance of Hopkins's case from his alleged co-conspirators would require the government to undertake significant additional expenditures of time and resources by duplicating their lengthy presentation of witnesses and exhibits in two separate trials. Either option would surely "inconvenience . . . the litigants, witnesses, [other] counsel, and the [C]ourt," id. at 96-97 (internal quotation marks and citation omitted), in such a way as to "obstruct orderly judicial procedure [and] deprive [the Court] of [its] inherent power to control the administration of justice," Vallery, 103 F.3d at 57 (internal quotation marks and citation omitted). Finally, and most fundamentally, Hopkins's current attorney, Mr. Clennon, is an experienced advocate who is eminently capable of effectively representing the interests of the defendant at trial while fully protecting his constitutional rights. The Supreme Court has observed that "the essential aim of

6

the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988) (citations omitted); see Shepherd, 102 F.3d at 564 (finding that a trial court's denial of a defendant's motion for a continuance of trial in order to secure new counsel did not violate the defendant's Sixth Amendment rights where, inter alia, the defendant's original attorney "was 'competent and well-equipped' to handle [his] defense"). As noted above, Mr. Clennon has given absolutely no indication that he will not be prepared to proceed with the trial as scheduled, and this Court has every confidence in his ability to more than adequately represent the defendant, based on its personal knowledge of Mr. Clennon's superb legal abilities. Accordingly, it is hereby

**ORDERED** that the defendant's motion for reconsideration is DENIED.

**SO ORDERED** this 30th day of July, 2007.

REGGIE B. WALTON
United States District Judge