UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA      :
                              :
     v.                       :   Crim. No. 06-227-02(RBW)
                              :
TROY ANTOINE HOPKINS          :


          DEFENDANT'S RESPONSE TO PRESENTENCE REPORT
             AND MEMORANDUM IN AID OF SENTENCING

     Troy Antoine Hopkins, through undersigned counsel, respectfully submits this response to the Presentence Report and his Memorandum In Aid of Sentencing to assist the Court in fashioning an appropriate sanction.  Sentencing is set for May 16, 2008.  Responses or objections to the PSR are organized by paragraph number in their order of appearance in the Report.

     P. 5, ¶10: The defendant takes issue with the factual assertion that he ever escorted couriers.  The Probation Officer responds that the finding is derived from the recital of allegations in Magistrate Judge Facciola's detention order entered June 1, 2007.  Many of the conclusions in the detention order are derived from the oral proffer of facts made by Assistant United States Attorney S. Elisa Poteat.  The proffer was wide-ranging and included some scenarios not borne out by or, in some instances, contradicted by the evidence at trial.  The report writer, as explained on page 23, acknowledges that the Court is in the best position to determine from witness testimony

what information has been reliably shown.  There is no evidence Mr. Hopkins escorted couriers.  This observation obtains as well with respect to ¶19 (p. 6).

    P. 5, ¶11:  Mr. Hopkins never participated in nor sanctioned the dilution of phencyclidine with starter fluid.

    P. 5, ¶13: In an objection not previously raised by counsel with the Probation Officer, Mr. Hopkins contests the factual assertion that anyone retrieved arms from inside the Lundy Avenue home.  All of the firearms inside the house were identified by Troy Chavious as belonging to Alfred Hopkins, and none of them were identified as having been used that day.  No witness on the scene testified anyone retrieved a firearm from inside the house (Troy Chavious retrieved a gun from under a bush).

    P. 6, ¶16: There are no intercepted conversations of Troy Hopkins ever discussing the possible death of couriers.  Again, the allegation derived from the facts recited in the Detention Order and is based on a proffer, not evidence received in court.  No phone call received in evidence alludes to this lurid but baseless allegation.

    P. 6, ¶18: The empty bottle under the bush was tested for the presence of phencyclidine and none was found.  The gun found under the bush was identified as belonging to Troy Chavious.  All of the firearms in the house were identified as belonging to Alfred Hopkins.  No Uzi firearm was recovered.  None of the firearms were banned to Alfred Hopkins by Maryland or Federal law.  Mr. Hopkins was a retired policeman licensed to own a

firearm.  According to incomplete records provided by the United States most of the guns were properly registered.

P. 7, ¶21:  There should be no adjustment for Obstruction of Justice pursuant to U.S.S.G. §3C1.1.  Application note five (5) of that guideline instructs that some conduct ordinarily does not warrant application of this adjustment, including specifically the act of avoiding or fleeing from arrest (see Application Note 5(d)).  In Application Note 4, a non-exhaustive list of obstructive conduct that ordinarily does warrant the adjustment, there is no mention of the type of behavior alleged here.  The two-point adjustment added by ¶28 should not be calculated in the offense level.  The obstruction of justice adjustment is improperly applied here.

p. 7, ¶24:  The report writer properly selects an offense level of 32.  In its Receipt and Acknowledgment of Presentence Investigation Report, and in its Memorandum In Aid of Sentencing, the government urges the court to find an offense level much higher than 32 based on projections of PCP allegedly transported as a result of the overall conspiracy (relevant conduct).  The calculations are bolstered by supposition and belied by the sworn testimony at trial.  It includes conduct and drug amounts unforeseeable to the Defendant within the scope of any activity jointly undertaken.  Primarily, calculating amounts based on flight records is too inexact in light of the testimony received.  Tenisha Adams testified she made several trips to D.C. without Troy's knowledge and, sometimes, acting in concert with other

persons unrelated to the Defendant.  She testified to making several purely social visits.  Tenisha Adams also testified that sometimes Lanika Franklin traveled with her to D.C. but continued on to New York City by train, not stopping in D.C. to deliver anything.  At least one of the trips testified to by Dominique Washington was conducted wholly beyond the Defendant's knowledge or awareness and outside th scope of affairs willingly disclosed by Darnell Jackson to the Defendant.  Assuming only one-half gallons came with each courier is not unreasonable in light of at least one witness' inability to accurately size the bottles they were carrying.  The government wants to pat itself on the back for making a "conservative" estimate when, in reality, it must: the reliable evidence of so many kilos of phencyclidine being transported is overstated and conclusory without foundation or accurate extrapolation.  The readily-provable relevant conduct is properly calculated and the base offense level is appropriately determined to be 32.

P. 7, ¶25: In an objection not previously raised, Mr. Hopkins denies use or possession of a dangerous weapon and urges the Court not to adopt the two-point adjustment pursuant to U.S.S.G. §2D1.1(b)(1).

P. 7, ¶29: The adjusted offense level should be 36.

PART B, THE DEFENDANT'S CRIMINAL HISTORY:  In objections not previously raised with the Probation Officer, the Defendant has on this date interposed an objection, pursuant to 21 U.S.C. 851(d), to the government's information as to prior convictions,

filed in support of its seeking an enhanced statutory minimum sentence pursuant to 21 U.S.C. §841(b)(1)(A)(iv).  The use of prior convictions to enhance a sentence should be an element of the offense alleged by the grand jury in the indictment, and proven to the jury beyond a reasonable doubt.  The failure of the United States to allege and prove the predicate prior criminal convictions as an element of the conspiracy offense alleged, should deprive the government of authority to enhance the minimum mandatory sentence.  Defendant therefore denies the three underlying drug convictions cited in ¶¶34, 35, & 36 and objects to their being used to enhance the minimum sentence here.  See Defendant's Notice of Objection to Government's Corrected Notice of Prior Convictions And Sentencing Enhancements (Doc. 197).  The criminal history category calculation made not using those 3 prior felony drug convictions not proven beyond a reasonable doubt would result in a total of 5 points, and result in Category III.  Without those convictions scored there is no basis upon which to classify Mr. Hopkins as a Career Offender pursuant to U.S.S.G. §4B1.1.  If the convictions were awarded points the resulting total would be 11, resulting in Criminal History Category V.  If, for the reasons advanced and argued in Defendant's Objection to Government's Corrected Notice of Prior Convictions And Sentencing Enhancements (Doc. 197), the drug convictions must be proven to sustain their use in applying an enhanced minimum penalty of life imprisonment, than the same should be true for their use as predicate offenses to apply

Career Offender minimum penalties in excess of the ten-year minimum term of a sentence not enhanced.  The resulting offense level of 36 and Criminal History Category V results in a sentencing range of 292-365 months.  For reasons stated later, Mr. Hopkins should be sentenced at the low end of the applicable guideline range, 292 months.

P. 15, ¶63, in a modification not previously suggested, the report should be amended to reflect that no treatment plan for the diagnosed sleep apnea has been implemented.  Mr. Hopkins was first scheduled for a hospital procedure to implement a proper oxygen night-breathing device.  Because the procedure was planned for a date during the extended trial it was postponed and never rescheduled.  Despite persistent contact by Mrs. Hopkins with infirmary staff and Mr. Hopkins' doctor, the matter is yet to be addressed and he remains plagued by sleep disorder and near-constant exhaustion in waking hours.

**RESPONSE TO GOVERNMENT'S MEMORANDUM**

In its Memorandum in Aid of Sentencing, the United States makes broad assertions unsupported by reliable evidence and characterized by overstatement (not unlike the exaggerated proffer made at the initial detention hearing addressed previously).  The prosecution asserts Mr. Hopkins was unswayed by the seizure of drugs at Dulles International Airport on May 24, 2006, and that receipts recovered from his parents' home verified a subsequent continuing pattern of illegal conduct, including

evidence of his holing up in Los Angeles hotels for weeks at a time while couriers ferried drugs.  Counsel reviewed all the evidence recovered on August 1, 2006, and found only one receipt post-dating the May 24 seizure, and that for a Washington-area hotel.  There is no evidence of continuing flights by Mr. Hopkins or any of the couriers identified here.  There is a paucity of evidence, reliable or otherwise, supporting these allegations.

The government asserts Mr. Hopkins sold cocaine during the course of the conspiracy.  There is only one instance, that recounted, of his agreeing to assist Darnell Jackson's uncle one time in preparing cocaine base, not purchased, sold, or retained by Mr. Hopkins.  His 2005 arrest with 2 others in a car did not result in his being prosecuted.

The government asserts there is no "excuse" in Mr. Hopkins' formative years driving him to a life of drug-dealing.  To the contrary, despite the veneer of having enjoyed middle-class advantages, Mr. Hopkins did confront personal hardship during his formative years and subsequently spiraled into a life of drug use and vagrancy.  During his time of athletic participation (football) at DeMatha High School Mr. Hopkins was injured, severely limiting his projected interests.  His own teammates exposed him to drug use, which early on grew into drug abuse and dependence.  He lost his interest in school and encountered retaliation at home.  His father sanctioned him by refusing to pay for private school tuition and he transferred to public high school in Prince George's County.  Not long after, his drug use

-7-

escalating and including PCP, Alfred Hopkins evicted Troy Hopkins, forcing him to fend for himself and attempt to deal with a growing substance dependence and gambling addiction, as well as other compulsive behaviors.

Since the United States Supreme Court decided *U.S. v. Booker* and *U.S. v. Fanfan*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), two separate majority opinions effectively eliminated the mandatory nature of the United States Sentencing Guidelines and resurrected the traditional sentencing factors enumerated at 18 U.S.C. §3553(a)(1-7). The statute now supersedes the guidelines and requires the court to impose a sentence "sufficient but not greater than necessary" to achieve the purposes of sentencing (18 U.S.C. §3553(a)(2)(A-D)) after considering:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the kinds of sentences available;

(3) the kinds of sentences and the sentencing range established by the now-advisory U.S. Sentencing Guidelines;

(4) the need to avoid unwarranted sentencing disparity among defendants with similar records that have been found guilty of similar conduct, and;

(5) the need to provide restitution to any victim of the offense.

As the attached letters attest, Mr. Hopkins started out as a productive and healthy citizen. His future is salvageable and he

should be afforded at least the hope of emerging into society sometime far in the future.  Life imprisonment is a disproportionately punitive punishment for drug sale endeavors pursued in search of economic independence and conducted virtually free of physical violence.  Therefore, the Court should sentence Mr. Hopkins to a term of imprisonment not in excess of twenty-five years.

The Career Offender section of the Sentencing Guidelines, like the entire construct of the guidelimes themselves, are no longer mandatory in their application.  The sentencing factors enumerated in 18 U.S.C. §§3553(a)(2)(A-D) outweigh, in Mr. Hopkins' case, the need or justification for imposing an enhanced career offender guideline sentence or statutory minimum sentence in order to adequately achieve the purposes of sentencing.

The court is now empowered to do otherwise in the exercise of its discretion.  *See United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005)(facts supporting enhancement existed, such that enhancement *could* be applied, leaving it to district court as to whether it *ought* to be applied now that Guidelines are advisory), *United States v. Ranum*, 353 F.Supp.2d 984 (E.D. Wis. 2005), *United States v. Hoskins*, ___ F.Supp.2d ___, 2005 WL 711916, 2005 U.S. Dist. LEXIS 3972 (D. Mont.April 8, 2005)(Molloy, J.)(while "[t]he Government asks me to impose a life sentence simply because it is the sentence dictated by the advisory Guideline[,] [t]hat argument assumes that *Booker's* abandonment of mandatory guidelines is illusory[,]" but "[u]pon examination of the entire

*Booker* opinion, I am convinced that the Supreme Court did not intend for the Guidelines to be advisory in theory by mandatory in fact.").

Traditional sentencing factors that inform the court's discretion in this case militate against the harsh severity of the Career Offender section of the Sentencing Guidelines. A sentencing range of 292-365 months (offense level 36, criminal history category V) is more than adequate to fulfill the traditional sentencing purposes of punishment, deterrence, and rehabilitation. The court's sentence should also reflect the principles of proportionality with respect to the co-defendants in this case, as well as other similarly situated defendants.

Taken together, the guideline sentence range of 292-365 months responsibly, reasonably, and equitably punishes, deters, and incapacitates Mr. Hopkins for his criminal behavior. It is *sufficient, but not greater than necessary,* to serve the purposes of sentencing while also recognizing his rehabilitative potential and past contributions to his family and church.

Respectfully submitted,

_____
CARY CLENNON, #366816
Counsel for Troy Antoine Hopkins
Appointed by the Court

P.O. Box 29302
Washington, D.C.  20017-0302
(202) 269-0969