**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 06-227-02(RBW)** |
| | : | |
| **v.** | : | |
| | : | |
| **TROY ANTOINE HOPKINS,** | : | |
| **Defendant** | : | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby provides the following information responsive to the Court's Order of May 21, 2008:

I.    Traveling with Couriers.

In his objections to the Pre-Sentence Report, the defendant states that he never accompanied ("escorted") drug couriers. This is not exactly correct. While the evidence adduced at trial demonstrated that the defendant placed the couriers on separate flights from himself to insulate himself from detection, there were instances where flight records showed he traveled with persons identified as drug couriers or facilitators. For example, on May 25, 2005, Hopkins flew from Dulles International Airport to Long Beach Airport via JetBlue with Lolita Swann using a one-way ticket. Tr. October, 16, 2007, a.m. pp. 16-18. Swann functioned as a facilitator and courier for Troy Hopkins, according to the testimony of Tinesha Adams. Tr. October 4, 2007, a.m., pp. 38-39, 72, 119; Tr. October 4, 2007, p.m., pp. 25-26.[1] Further a cursory inspection of the flight records of Hopkins' courier reveals that Swann frequently booked the flights for the drug couriers as indicated

---

[1] JetBlue records were admitted at trial, Exhibits FR-000001 through FR-000253, through Misty Matthews, a custodian of records.

below.  After having two couriers were arrested at Burbank Airport on January 24, 2004, Hopkins

made efforts to distance himself from the couriers.  Indeed, as a leader in the organization, the

defendant enjoyed the luxury of using unfortunate young women and men as drug mules while he

flew on different flights to avoid being connected to his illicit product.[2]

II.    Diluting PCP with Starter Fluid.

The defendant states that he never diluted the PCP he sold with car starter fluid.  The

government's theory has never been that Hopkins himself diluted PCP with car starter fluid.

However, this practice by his co-conspirators was something he could reasonably foresee.

According to a witness, Hopkins kept car starter fluid in his father's garage and his nephew, Troy

Chavious, knew that car starter fluid was used to "stretch" PCP.  Tr. October 11, 2007, a.m., pp. 123-

124.  Evidence at trial showed that Hopkins saw Darnell Jackson bring car starter fluid to his

parents' home on Lundy Drive during a PCP transaction that was videotaped by the FBI.  Tr. October

11, 2007, a.m., pp. 123-126.  Further, Hopkins' phone calls with Darnell Jackson, played for the jury,

reveal that Hopkins knew it was the practice of his co-conspirators to do so.  Tr. October 22, 2007,

a.m., pp. 26-29, 46-47 (including FBI surveillance tape depicted Darnell Jackson with Christopher

Dobbins carrying car starter fluid into garage at Troy Hopkins' house while Hopkins is present, and

wiretap call wherein Darnell Jackson explains that by adding starter fluid, Hopkins can "stretch" the

PCP and increase profits) (*See also* Exhibit 20, multiple cans of starter fluid recovered from

---

[2]

We do agree with the defendant that there was no conversation about him killing the couriers
presented at trial. However, he did talk to Darnell Jackson about putting a gun in Troy Chavious'
mouth when he thought Chavious was stealing PCP from his stash.  That wiretap call was played for
the jury.  Tr. October 22, 2007, p.m., pp. 51-58; wiretap calls 4795, 4892 ("I'm about put a pistol
in his mouth," call 4795).

Hopkins' garage on Lundy Drive).

It is worth noting that the use or non-use of car starter fluid does not change the defendant's sentencing exposure.[3]

III.    Sales of Cocaine During the PCP Conspiracy.

The defendant concedes in his objections that he sold cocaine one time during the conspiracy to Darnell Anthony Jackson's uncle, Darnell Kinard Jackson (a.k.a. Homicide).  Therefore this fact is not in dispute.

IV.    The Prior Convictions.

This Court has ruled that the government was not obligated to prove the defendant's prior convictions as part of its case-in-chief.  However, it should be noted that, during the motions hearing, the defendant admitted that he was the person convicted in the three prior convictions the government used as the basis for seeking a life sentence in this case.  Tr. September 24, 2007, pp. 151-157.  Further, Hopkins specifically admitted that, when he plead guilty to each of his three prior felony convictions, including two felony drug convictions, he was represented by counsel.  Id.

V.    The Amount of Drugs Attributable to Hopkins as Relevant Conduct is Over 30 kilograms.

The testimony of just the drug couriers and lieutenants alone proved that Hopkins was responsible for the transportation of over 30 kilograms of PCP during the period of the conspiracy. However, additional evidence proves that this amount is actual low in terms of Hopkins' relevant conduct.

---

[3]

Hopkins and Jackson spoke in a wiretap call played for the jury wherein Jackson was heard explaining to Hopkins that he had put the starter fluid in an old oven in the Hopkins' garage.  Tr. October 22, 2007, p.m., pp.46, call number 4553, from May 20th, 2006.

All of the couriers who testified at trial revealed that they were expected to carry approximately a gallon of PCP on each trip to Washington. Both Lanika Franklin and Tinesha Adams were carrying approximately a gallon (which equals roughly 3.7 kilograms, or a slight bit less). Both women testified that they thought they were bringing the drugs to Troy Hopkins (see below). If on each flight individual couriers carried approximately a gallon of PCP for the conspiracy, the total amount attributable to Hopkins as relevant conduct surpasses the highest amount anticipated in U.S.S.G. §2D1.1(c)(1), that is 30 kilograms. This would be true even if one assumed that each courier carried a half a gallon on each trip. Therefore, the defendant's base offense level, not considering his drug priors, would make a life offense mandatory in this case, and his offense level should be a level 38. For the Court's convenience, the amounts of PCP are placed in **bold**.

A.    Amounts Seized by the FBI.

Chemist Steve Demchuk, a chemist for the Drug Enforcement Administration (DEA), testified to the amount of drugs that were seized by the Federal Bureau of Investigation (FBI), all of which tested positive for a mixture and substance containing a detectable amount of PCP. Tr. October 29, 2007, p.m., pp. 33-43. Specifically, from the March 9, 2006, controlled buy, the FBI recovered 109.8 grams of PCP. Id. From the seizure at Dulles Airport on May 24, 2006, the FBI recovered 3,285.7 grams of PCP. Id. From the controlled buy that started on June 13, 2006, and concluded on July 5, 2006, the FBI recovered 774.4 grams of PCP. Id. From the Lipton Iced Tea brand bottle recovered outside the Hopkins' home in Lanham, Maryland, there were trace amounts

of PCP and PCC, a PCP precursor chemical.[4]  Id.  Therefore, the total amount of PCP that was recovered by the FBI was **4.1699 kilograms**.  (*See also* Exhibits 1 through 19, drug evidence.) However, this amount does not come close to the amount that was proven attributable to Hopkins at trial.

  B.  Amounts Purchased with the Assistance of Hopkins' Lieutenant.

  Troy Chavious testified that on at least six to seven occasions, he took $10,000, the price of a gallon of PCP in Compton, to California for his uncle, Troy Hopkins.  Tr. October 10, 2007, p.m., pp. 73-75.  Further, Chavious was aware that people other than himself were doing the same thing, including, Crystal Parker and Scott Wages.  Id. at 76-77, 91-92.  If each $10,000 represents the purchase price of a gallon of PCP, then these deliveries of money prove that, at the very least, seven gallons of PCP were purchase by Hopkins.  Conservatively, this testimony alone proved 25.9 kilograms of PCP.  However, if the Court wanted to be cautious in its estimate, it could conclude that the evidence proved a minimum of **21 kilograms** of PCP were purchased by Hopkins alone, not including by his co-conspirators.

  C.  Couriers' Testimony.

    1.  Dominique Washington.

  Courier Dominique Washington testified that she made a number of trips from Long Beach Airport to Dulles to transport gallon-quantities of PCP as part of the conspiracy.  Tr. October 17, 2007, p.m., pp.107-134;  Tr. October 18, 2007, a.m., pp. 6-64.  On the first trip Ms. Washington carried approximately 64 ounces of PCP, and she flew with two other couriers, Tinesha Adams, and

---

[4]

In contradiction of the evidence admitted at trial, the defendant still protests that this bottle contained no PCP.

her brother, Alfred, who each carried 64 ounces of PCP.  Tr. October 17, 2007, p.m., pp. 106-113.
Before she left California, she saw Troy Hopkins who was present in the apartment where Scott
Wages and Tinesha Adams were packaging up the PCP for flight.  Id. 116-128.  There was no
seizure of the drugs on this occasion that should be deducted from this amount of PCP.  Therefore
the total amount of PCP transported on this trip was approximately was **5.44310 kilograms**.

 On the second trip, Ms. Washington traveled with another courier.  Id. at 116-120.  On that
trip, in the fall of 2005, Hopkins paid for Ms. Washington's taxi and hotel.  Id.  Ms. Washington
flew with "Shawntae" (Anderson), and each of them carried two 32 ounce bottles of PCP.  Id.; Tr.
October 18, 2007, a.m., pp. 6-15.  The total amount transported was 128 ounces, which converts to
**3.62073 kilograms**.  This amount is was clearly attributable to Hopkins as relevant conduct, and
cannot be deducted from the total seized amount since these drugs made it to Maryland without
falling into the hands of law enforcement.  Tr. October 17, 2007, p.m., pp. 110-135.

At the end of this second trip, Ms. Washington took $10,000 from Scott Wages, Hopkins'
co-conspirator, back to Tony Hilt, Hopkins' PCP supplier,  in Compton, CA.  Id. at 129-131.  This
money represented another **one kilogram** purchase of PCP that the government did not intercept and
that should be included in the total amount of drugs factored into Hopkins' relevant conduct.

Ms. Washington made a third trip to deliver PCP on behalf of the conspiracy.  In December,
Ms. Washington and a second courier, "Aisha," were introduced to Darnell Jackson by Troy Hopkins
while the two men were together in California.  Id. at 127-130.  Ms. Washington and Aisha each
carried two 32 ounce shampoo bottles containing PCP in their luggage from Long Beach to Dulles.
Id.  Based on this third trip, this Court can reasonably attribute a total of **3.62073 kilograms** to
Hopkins' relevant conduct.

In March 2006, Ms. Washington made a fourth trip, however, part of the PCP purchased on that trip (a gallon) was seized by the FBI in the controlled purchase.  Tr. October 29, 2007, p.m., pp. 7-9.  Therefore, the 32 ounces purchased by the FBI from Darnell Jackson is accounted for in the amounts referenced by Chemist Demchuk.  That would leave only 32 ounces to add into the total amount attributable to Hopkins as relevant conduct.  That 32 ounces converts to **.907184 kilograms** that should be credited against Hopkins.  Tr. October 18, 2007, a.m., pp. 33; October 29, 2007, a.m., pp. 127-129.

Ms. Washington made yet another trip in April 2006, on behalf of the conspiracy, as did her cousin, Shamonique Walker, each of them carrying approximately a gallon of PCP from Long Beach to Dulles.  Tr. October 18, 2007, a.m., pp. 24-36.  The total amounts delivered by these two couriers would convert to **7.4 kilograms**, which this Court can reasonably attribute to Hopkins' relevant conduct.

2.    Lanika Franklin.

Courier Lanika Franklin testified that she made at least four trips on behalf of the conspiracy.  *See generally*,  Tr. October 9, 2007, p.m.; Tr. October 10, 2007, a.m.  Ms. Franklin's first trip was with Tinesha Adams and Adam's  brother, Alfred, in the summer of 2005.  Tr. October 9, 2007, p.m.,  pp. 68-84.  On that trip, each of the three couriers carried three 16 ounce bottles of PCP.  Id. at 72-76.    Therefore the total amount carried was 144 ounces, which converts to  **4.08233 kilograms**.  This amount of PCP made it to Maryland and was not seized by law enforcement.

In the fall of 2005, Ms. Franklin made a second trip, this time taking at least three 16 ounce bottles of PCP totaling 48 ounces, which converts to **1.36077 kilograms**.  Tr. October10, 2007, p.m., pp. 14-21.  When Ms. Franklin arrived in Maryland she was met by Hopkins.  Id. at 19-27.

Once she was ready to leave Maryland, she took a stack of money to be delivered from Hopkins to Scott Wages, who was then in California. Id. at 31-34. Presumably this reflects yet another purchase of a gallon of PCP not calculated herein.

In May 2006, Ms. Franklin took two trips. Id. at 35. In the early part of May, Ms. Franklin went to Tony Hilt's house with Tinesha Adams where they got a gallon juice bottle of PCP. Id. at 36-43. After preparing the PCP for flight, Ms. Franklin took the PCP from Long Beach to Dulles, and went to a hotel in Maryland where she met Troy Hopkins. Id. at 40-45. The gallon of PCP converts to **3.7 kilograms** which should be added to Hopkins' relevant conduct.

Finally, Ms. Franklin and Adams were stopped by the FBI on May 24, 2006, at Dulles Airport with more than six kilograms of PCP. Because this amount was reference in the testimony of Chemist Steve Demchuk it has already been added to the amounts the government deems relevant conduct of Hopkins.

        3.     Tinesha Adams.

Tinesha Adams testified that she met Hopkins in at least 2004, the year her baby was born, and immediately began transporting PCP for him. Tr. October 3, 2007, p.m. pp. 138-145. On the first trip, she took 32 ounce bottles from California to Maryland. Id. at 145. Although Adams did not indicate exactly how many bottles she took, she used the noun plural - bottle*s* - which means she took at least two 32 ounce bottles, or a total of 64 ounces, which converts to **1.81436 kilograms**. This amount should be added to Hopkins' relevant conduct.

Over her time in the conspiracy, Ms. Adams also carried approximately $80,000 for Hopkins which she delivered to conspirators in California for the purchase of PCP. Tr. October 4, 2007, a.m., pp. 29-34. Assuming that a gallon of PCP sold for approximately $10,000, this dollar amount

represents the purchase of at least eight gallons of PCP by Troy Hopkins, which converts to **29.6 kilograms**.

Parsing through Adams testimony, she made many trips on behalf of the conspiracy, carrying at least a gallon of PCP on each trip. *See generally*, Tr. October 4, 2007, a.m.. Excluding the times she traveled allegedly without Hopkins' knowledge, which were few in number, she still made a large number of trips that should be counted towards Hopkins' relevant conduct. Ms. Adams testified about many trips she took with other couriers, and about many other couriers whom she recruited. These included, "Tina," the heavy-set white woman, who on a single trip carried two gallons of PCP for Hopkins, which converts to **7.4 kilograms**. Id. at 80-82.

Adams believed she took between 15 and 20 trips to deliver PCP on behalf of the conspiracy, but she also said that some of these trips were for social reasons. Id.; Tr. October 4, 2007, p.m., pp. 35-38. Assuming for a moment that only half of the trips were to deliver PCP, and excluding the trip from May 24, 2007, where Ms. Adams and Lanika Franklin were caught at Dulles Airport with over two gallons of PCP, that still means that Ms. Adams took approximately nine trips carrying a gallon of PCP for the conspiracy, which converts to **33.3 kilograms.**

D.    <u>Darnell Jackson's Lieutenant's Testimony.</u>

Christopher Dobbins testified that he made two trips to California on behalf of the conspiracy. *See generally,* Tr. October 30, 2007, p.m.; Tr. October 31, 2007 a.m. In 2006, Dobbins went to Los Angeles with Darnell Jackson. Tr. October 30, 2007, a.m., pp. 54-59. In Los Angeles Dobbins and Jackson met up with Hopkins and a woman named "Petey" who was a facilitator for the conspiracy. Id. They all went to Tony Hilt's house, and Jackson and Hopkins went inside together. Id. A short time later, Jackson emerged with a gallon jug of PCP, which they took back

to a motel on West Century Boulevard near LAX.  Id. at 55-60.

While they were still at the hotel, Tinesha Adams arrived carrying a wad of money which she gave to Troy Hopkins.  Id. at 61-64.  The men then gave the bottles to a courier named "Tina," a heavy-set white female, who took the gallon of PCP with her on a plane.  Id. at 64-60.  Therefore, not only did Hopkins participate in the purchase of a gallon, or **3.7 kilograms**, of PCP, he also appeared to be in preparation for a second purchase of a gallon, or **3.7 kilograms**, of PCP.  Id.

On the next trip to California for the conspiracy, Dobbins took $14,000 with him, understanding that $10,000 of that money was supposed to be used to buy a gallon of PCP.  Id. at 72-74.  After Dobbins and Hopkins met in Los Angeles, the $10,000 was used by Hopkins to buy a gallon, or **3.7 kilograms**, of PCP from Tony Hilt.  Id. at 72-77.

On May 13, 2006, Darnell Jackson instructed Dobbins to meet Hopkins at a hotel in Maryland.  Id. at 82-86.  The wiretap call that contained this conversation was played for the jury at trial.  Id. at 82-86.   As instructed, Dobbins picked up 32 ounces of PCP from Hopkins, which converts to **.907184 kilograms.**  Id.

E.    Flight Records that Demonstrate Much Higher Amounts Transported by Hopkins.

In determining the amounts of PCP attributable to Hopkins, this Court can find ample support in the record for amounts well over 30 kilograms based on the above testimony coupled with the flight records of persons associated with Hopkins.  Indeed, there was substantial testimony about flights taken by persons associated with Hopkins' conspiracy, including facilitators, couriers, and Hopkins himself.  These flights were incredibly numerous.  The Court can also assume that Hopkins had no legitimate source of income during this period of the conspiracy since he did not pay his taxes

in the filing years 2003 through 2005. These self authenticating records from the Internal Revenue Service were admitted on the record on October 11, 2007. Therefore this Court can reasonably conclude that the trips listed below were not made for legitimate professional reasons. Though Hopkins claimed to have a business promoting bands, his nephew never saw him actually travel to California for the purpose of promoting a band or putting on a show, and Chavious never carried money to California for a music show. Tr. October 15, 2007, p.m., pp. 47-55. In chronological order the flights were as follows:

May 24, 2003, Kevin Barnett, Hopkins' co-conspirator during the January 24, 2004 incident in Los Angeles, flew with Hopkins on JetBlue Airlines from Dulles to Long Beach with a return flight set for May 26, 2003. Tr. October 16, 2007, a.m., pp. 74-75, testimony of Misty Matthews of JetBlue. Los Angeles Sheriff's chemist Chien-Hsing Lee testified that the amount of PCP recovered from Hopkins' couriers and facilitators during the January 24, 2004, was roughly 201 ounces, which converts to 5.69825 kilograms. Tr. October 16, 2007, p.m., pp 86-96. While this Court ruled that the evidence from 2004 was extrinsic to the instant conspiracy, it can still be considered on the issue of intent. However, it was a nearly identical crime and was assuredly the genesis of the instant conspiracy. In determining drug amounts, we believe this Court can assess Hopkins' intended amounts by considering that he moved over five kilograms in this earlier act.

January 3, 2005, Troy Hopkins flew via Southwest Airlines from Los Angeles International Airport (LAX) to Thurgood Marshall Baltimore Washington Airport (BWI), on a flight booked by "Marquita," presumably Booth, his child's mother who was arrested with PCP in Burbank Airport on January 24, 2004. Tr. October 16, 2007, p.m., pp. 11-29. This flight occurred during the period of the conspiracy and the Court can reasonably assume it was for purposes of conduction drug

business.

March 23, 2005, Scott Wages and Troy Hopkins flew via Southwest Airlines from BWI to LAX on Southwest Airlines, on a flight that was purchased online using Scott Wages' email address. Id. at 32-35, 43-46. The Court can reasonably assume that some PCP, such as the standard gallon, or 3.7 kilograms, was purchased on this trip. Scott Wages would sell PCP to Hopkins sometimes, or he would buy it from Hopkins, or he would send money to people in California, or go to California himself to help with the PCP operation, staying at the same hotels along West Century Boulevard where the members of conspiracy often stayed. See Tr. October 11, 2007, a.m., pp. 17-18, 31, 57-59, 61. Wages sent money to Tinesha Adams and to Troy Chavious. Id. at 38-43; Tr. October 17, 2007, p.m., pp. 43-44, 52-53. Wages and Hopkins were together in California at an apartment on more than one occasion when Dominique Washington was packing up her suitcase to carry PCP aboard an airplane to be delivered in Washington, DC. Tr. October 17, 2007, a.m., pp 23-24, 40, 45 (Wages sending money to Hopkins, Troy Chavious, and Tinesha Adams in Los Angeles); Tr. October 17, 2007, p.m., pp. 43-44, 109-111, 118-119, 120-121. 129-130, 134; Tr. October 18, 2007, a.m., pp.6-7; Tr. October 4, 2007, a.m., pp.118-119, 133-134, Tr. October 9, 2007 a.m., pp. 37-39.

March 27, 2005, Troy Hopkins flew via Southwest Airlines from LAX to BWI. Id. at 33-36. Given that the conspiracy in was in full swing at this point, and Hopkins was regularly staying in Los Angeles to further the conspiracy, the Court could reasonably assume that this trip occurred in furtherance of the conspiracy.

April, 3, 2005, Troy Hopkins flew on JetBlue Airlines from Long Beach to Dulles using a one-way ticket. Tr. October 16, 2007, p.m., pp. 10-11. This was Hopkins' pattern at the end of a

successful PCP buying trip. The Court can reasonably assume that this trip was in furtherance of the conspiracy.

May 7, 2005 Lolita Swann and Troy Hopkins flew from Dulles to Long Beach. Tr. October 16, 2007, a.m., pp. 16-22. Lolita Swann was a facilitator for Troy Hopkins who later made efforts to compete against him. Tr. October 4, 2007, a.m., pp. 72-73, 108, 125. (See below for flights booked by Swann for other members of the conspiracy.) This Court can reasonably assume that this trip was in furtherance of the conspiracy.

May 10, 2005, Troy Hopkins flew from Long Beach to Dulles on a flight booked by Lolita Swann. Id. at 16-22. This Court can reasonably assume that this trip was in furtherance of the conspiracy.

May 16, 2005, Troy Hopkins and Reginald Matthews flew from Dulles to Long Beach on a flight booked by Scott Wages. Id. at 23. Because his co-conspirator booked the trip, it would be reasonable for this Court to assume that this flight was in furtherance of the conspiracy.

May 19, 2005, Shawntae Anderson flew on a round-trip ticket from Long Beach to Dulles, with a return flight scheduled for May, 22, 2005. Id. at 24. Anderson was a courier for Hopkins and transported PCP for him as indicated at p. 4 *infra*. Therefore this flight likely represents the transportation of at least a gallon of PCP which converts to approximately **3.7 kilograms.**

May 22, 2005, Troy Hopkins flew on a one-way ticket booked by "Marquita" (presumably Booth) from Long Beach to Dulles. Id. at 24. This Court can reasonably assume that this trip represents a return flight after Hopkins engaged in drug business.

May 25, 2005, Troy Hopkins and Lolita Swann flew on a one-way ticket from Dulles to Long Beach that "Lolita," presumably Swann, booked herself. Id. at 25. This Court can reasonably

conclude that this flight was taken in furtherance of the conspiracy.

May 27, 2005, Tinesha Adams flew on a round-trip ticket from Long Beach to Dulles with a return flight booked for May 29, 2005.  Id. at 26.  This certainly represents one of the flights on which Adams transported at least a gallon of PCP or approximately **3.7 kilograms.**

June 4, 2005, Tinesha Adams flew on a round-trip ticket from Long Beach to Dulles with a return flight set for June 9, 2005.  "Tinesha," presumably Adams, booked her own flight.  Id. at 27.  This Court can reasonably assume that this flight was taken in furtherance of the conspiracy and that some PCP was transported by Adams on this occasion.

June 5, 2005, Troy Hopkins flew on a one-way ticket from Long Beach to Dulles on JetBlue Airlines.  Tr. October 16, 2007, a.m., pp. 26-28.  This Court can reasonably assume that this trip was made in furtherance of the conspiracy.

July 9, 2005, Shawtae Anderson flew from Dulles to Long Beach.  Id. at 16-22.  Anderson, a courier, was probably returning from a trip having delivered a gallon, or **3.7 kilograms** of PCP.  Therefore this Court can reasonably assume that this flight represents the successful delivery of PCP that was made to Hopkins and in furtherance of the conspiracy.  Tr. October 4, 2007 a.m., pp. 47-51.

July 15, 2005, Shawntae Anderson flew from Dulles to Long Beach.  Id. at 16-22.  This Court may reasonably make the same conclusion as in the above paragraph.

July 17, 2005, Tinesha Adams flew from Long Beach to Dulles, on a round-trip ticket with a return date of July 22, 2005.  Id. at 16-22.  This Court can reasonably assume that this trip was made in furtherance of the conspiracy and that Adams delivered a gallon, or **3.7 kilograms**, of PCP to Hopkins.

July 21, 2005, Shawntae Anderson flew from Long Beach to Dulles, on a flight booked by

14

Lolita Swann.  Id. at 16-22.  This Court can reasonably assume that Anderson, a courier, delivered at least a gallon, or **3.7 kilograms,** of PCP to Hopkins on this trip.

August 5, 2005, courier Keishaun Jackson flew from Long Beach to Dulles International Airport.  Id. at 16-22.  Ms. Jackson was also a courier for Hopkins.  Tr. October 4, 2007 a.m., pp. 49-51.  Therefore, this Court can reasonably assume that this trip was made in furtherance of the conspiracy and represents the transportation of at least a gallon, or **3.7 kilograms,** of PCP.

September 16, 2005, Lanika Franklin flew from Long Beach to Dulles with a return flight booked for September, 25, 2006.  "Tinesha," presumably Adams, booked the flight.  Id. at 30.

October 30, 2005, Ms. Franklin flew from Long Beach to Dulles.  Id. at 31.  This flight was in furtherance of the conspiracy and, based on Ms. Franklin's testimony should be added to Hopkins' relevant conduct.

November 2, 2005, Keishaun Jackson flew from Long beach to Dulles with a return flight set for November 4, 2005.  Id. at 34.  Again, Ms. Jackson was courier for the Hopkins' organization and this flight surely represents the transportation of at least a gallon, or **3.7 kilograms**, of PCP.

January 3, 2006, Troy Hopkins flew from Long Beach to Dulles via JetBlue.  Id. at 82.  This flight was probably made at the end of a successful trip to get PCP for the conspiracy, and the Court can reasonably conclude this.

January 4, 2006, courier Shawntae Anderson flew from Long Beach to Dulles on a  flight that booked by "Scott," presumably Wages.  Id. at 44.  Since Wages was a co-conspirator of Hopkins, and Ms. Anderson was a courier, this Court can reasonably assume that this flight represents the transportation of at least a gallon, or **3.7 kilograms,** of PCP.

January 5, 2006, Tinesha Adams flew from Dulles to Long Beach with a return flight booked

15

for January 8, 2006. Id. at 41. Based on the testimony of Adams, this Court can reasonably assume that this flight was made in furtherance of the conspiracy.

January 18, 2006, Bernie Hargrove and Darnell Jackson flew from Long Beach to Dulles on a ticket that was purchased at the airport counter. Id. at 39. This Court can reasonably assume that this flight was a return flight made after one that was taken in furtherance of the conspiracy.

January 20, 2006, courier Keishaun Jackson flew from Long Beach to Dulles with a return flight booked on January 21, 2006. Id. at 29. The person booking her flight was "Scott," presumably Wages, a co-conspirator and facilitator of Troy Hopkins. Id. Since Ms. Jackson was a courier for Hopkins, and Wages, Hopkins' co-conspirator, this Court can reasonably assume that this flight represents the transportation of at least a gallon, or **3.7 kilograms,** of PCP.

January 28, 2006, Keishaun Jackson, Nanette Benbo, and Gregory Gee, flew from Dulles to Long Beach. Their flight was booked by Diane ("Vickie") Barnett, a facilitator and co-conspirator of Hopkins at whose apartment both Tinesha Adams and Lanika Franklin stayed after the PCP was taken from their luggage on May 24, 2007. Id. at 83; Tr. October 4, 2007, a.m., pp. 89-92. It would be reasonable for this Court to assume that this flight was made in order to get at least a gallon, or **3.7 kilograms**, of PCP.

January 29, 2006, Tina Arredondo (likely the overweight white female described by Adams and Chavious)[5], Gregory Gee and someone named Mtanya Hunt flew from Dulles to Long Beach.

---

[5]

Troy Chavious testified that he thought Tina's last name was Sargonda, which is similar to Arrendondo. Id. at 79-80. Note that in wiretap call 5109, from May 21, 2006, Hopkins and Jackson talked about "Tina," and Jackson testified that they were referring to "a big, fat courier we had." Tr. October 22, 2007, p.m., pp. 58-59. In the call it is clear that Tina was in the Washington, DC area. Further, in the balance of the call, they discuss a future purchase of an additional three gallons of PCP that government has not even added to the above calculation, but which this Court reasonably

Id. at 85.    (See Tr. October 11, 2007, a.m., pp.14-16, Gregory Gee was a drug courier, and a chauffeur for Troy Hopkins, and Hopkins personally "hooked him up" with Tony Hilt.)  This Court can reasonably assume that this flight was made in furtherance of the conspiracy since two couriers were traveling.  Based on the number of couriers it would also be reasonable for this Court to assume that they carried at least two gallons, or **7.4 kilograms**, of PCP in furtherance of the conspiracy, and that this amount should be added to Hopkins' relevant conduct.

February 7, 2006, Troy Hopkins flew from Dulles to Long Beach with a return flight from Long Beach, through Oakland to Dulles.  Id. at 40.  This Court can reasonably assume that this trip was made in furtherance of the conspiracy, particularly since it was followed two days later by a flight by Tinesha Adams, a courier.

February 9, 2006, Tinesha Adams flew from Long Beach to Dulles with a return flight booked for February 10, 2006.  Id. at 41-42.  This Court can reasonably assume that this flight was made in furtherance of the conspiracy and that Adams transported at least a gallon, or **3.7 kilograms,** of PCP.

February 10, 2006, Troy Chavious flew from Dulles to Long Beach with a return flight booked the very same day.  Id. at 42.  This flight was definitely made in furtherance of the conspiracy so that Chavious could help Hopkins obtain at least a gallon, or **3.7 kilograms,** of PCP.

February 25, 2006, Troy Chavious flew from Dulles to Long Beach with return flight booked for February 28, 2006.  His flight was booked by "Diane," presumably Barnett (a.k.a. "Vicky") a co-conspirator who housed Tinesha Adams and Lanika Franklin for Hopkins in May 2006 after they

---

could.  Id.  Should the Court choose to add this amount, three gallons of PCP converts to roughly **11.1 kilograms**.

were stopped at Dulles Airport.  Id. at 43.  This Court can reasonably assume that this flight was made in furtherance of the conspiracy and represents a successful effort to purchase at least a gallon, or **3.7 kilograms**, of PCP.

March 1, 2006, Shawntae Anderson flew from Long Beach to Dulles with a return flight booked for the following day.  Id. at 44.  This Court can reasonably assume that this flight by Anderson, a courier, was made in furtherance of the conspiracy and involved the transportation of a gallon, or **3.7 kilograms**, of PCP.

March 9, 2006, Antoine Richards an Darnell Jackson flew from Dulles to Long Beach with a return flight booked for March 10, 2006.  Id. at 46.  This flight was definitely made in furtherance of the conspiracy and was part of an FBI controlled buy.

March 9, 2006, Dominique Washington flew from Long Beach to Dulles with a return flight booked for the following day.  Id. at 46.  This flight was made in furtherance of the conspiracy and is referenced above.

March 14, 2006, Darnell Jackson flew from Dulles to Long Beach.  Id. at 31.  This Court can reasonably assume that this flight was in furtherance of the conspiracy and was made to obtain at least a gallon, or **3.7 kilograms**, of PCP.

March 23, 2006, Shawntae Anderson flew from Long Beach to Dulles with a return flight booked for March 26, 2006.  The person booking her flight gave an address on Greely Avenue address in suburban Maryland, suggesting that it was booked by someone associated with Hopkins, instead of by Anderson, who was a California-based courier.  Id. at 45.  This Court can reasonably assume that this flight was made to deliver a gallon, or **3.7 kilograms,** of PCP.

April 24, 2006, Christopher Dobbins, Jackson's lieutenant, flew from Dulles to Long Beach

with a return flight booked for April 27, 2006. Id. at 34.  The person booking this flight used the address of The Senate Inn.  Id. at 34.  This flight was definitely made in furtherance of the conspiracy as indicated above and this Court can rely on Dobbins' testimony to support the conclusion that a gallon, or 3.7 kilograms, of PCP was transported on this trip. (This amount has already been included above.)

April 29, 2006, Troy Chavious flew from Dulles for Long Beach.  Id. at 67.  This Court can reasonably assume that this flight was made in furtherance of the conspiracy and involved coordinating the transportation of a gallon, or **3.7 kilograms**, of PCP.

May 12, 2006, Keishaun Jackson and Shawntae Anderson flew from Long Beach to Dulles with a return flight book for May 15, 2006.  Id. at 35.  Since both of these women were couriers, this Court can reasonably assume that the flight represents the transportation of at least two gallons, or **7.4 kilograms**, of PCP.

May 23, 2006, Lanika Franklin flew from Long Beach to Dulles, on a flight booked by "Tinesha."  Id. at 25.[6]  On May 23, 2006, Tinesha Adams flew on the same flight from Long Beach to Dulles with a return flight booked for June 4, 2006.  Id. 25.  This resulted in the seizure of two gallons of PCP by the FBI which is referenced above and should not be added a second time here.

June 27, 2006, Darnell Jackson, Troy Hopkins, Keith Roots and John Downs, flew from Dulles to Long Beach.  Id. at 36.  Although there was testimony about this flight being made to attend the BET Awards ceremony in Los Angeles, there was also testimony that, afterwards, Hopkins

---

[6]

There was some testimony about Lanika Franklin going to visit a boyfriend in New York, but her flights are different on those occasions.  For example, on January 10, 2006, she flew from Long Beach to New York's JFK Airport.  Id. at 28.  On August 24, 2005, she flew from JFK to Long Beach.  Id. at 30.

and Jackson hung around in an attempt to "holler" at Tony Hilt to try to get a gallon of PCP.  Tr. October 23, 2007, p.m., pp. 19-20.

July 4, 2006, Troy Hopkins and Scott Wages flew from Long Beach to Dulles on a one-way ticket.  Tr. October 16, 2007, a.m., pp. 28.  Because Hopkins and Wages worked together in the PCP business, it would be reasonable for this Court to assume that this trip represents an effort by them to obtain at least a gallon, or **3.7 kilograms**, of PCP.

July 9, 2006, Shawntae Anderson flew from Long Beach to Dulles with a return flight set on July 13, 2006.  Id. at 29.  Her flight was booked by Diane Barnett (a.k.a. "Vicky"), one of Troy Hopkins' facilitators.  Id.  This flight was clearly in furtherance of the conspiracy and this Court can reasonably assume that Anderson transported a gallon, or **3.7 kilograms**, of PCP for Hopkins' conspiracy.

July 15, 2006, Shawntae Anderson flew from Dulles to Long Beach on a flight booked by "Diane," presumably "Vicky" Barnett, one of Hopkins local facilitators.  Id. at 22-23.  This Court can reasonably conclude that Anderson, a courier, transported at least a gallon, or **3.7 kilograms**, of PCP in furtherance of the conspiracy and that this amount should be added to Hopkins' relevant conduct.

July 12, 2006, Gregory Gee flew from Dulles to Long Beach with a return flight set for July 19, 2006.  Id. at 84.  As indicated above, Gee was courier and chauffeur for Hopkins, and this flight was likely made in furtherance of the conspiracy.  This Court can reasonably assume that this flight was made to coordinate the transportation of a gallon, or **3.7 kilograms**, of PCP in furtherance of the conspiracy.

A single credit card was used to purchase flights on Southwest Airlines for Troy Hopkins,

Tinesha Adams, Katrina Jones, and Kim Booth.  Tr. October 16, 2007, p.m., pp. 60-65.  This is consistent with Tinesha Adams' testimony that there were far more couriers than government's counsel even knew about.

  E. The Total Record Supports a Conclusion that More than 30 Kilograms Were Transported by Hopkins.

  Taken as a whole, the record supports a finding that Troy Hopkins is accountable for much more than 30 kilograms of PCP as part of his relevant conduct in the conspiracy.

VI. Gun Use by Hopkins was Proven at Trial as Part of the Conspiracy and Hopkins' Relevant Conduct.

  The defendant claims that he should not receive an increase in his sentence for a having a gun as part of the conspiracy.  This claim ignores much of the testimony presented at trial and the surveillance tapes shown to the jury.[7]  On May 17, 2006, FBI agents were videotaping activities at the Hopkins' home on Lundy Drive in Lanham, Maryland.  Tr. October 11, 2007, a.m., pp. 67-70. Chavious noticed the FBI van and thought someone was watching the Hopkins' house.  Id. at 74-75. At that point, Hopkins called his friends who arrived with guns to protect the house.  Id. at 75-77. Hopkins took up at .9 mm pistol, and Chavious took up at P95 Ruger in defense of the home.  Id. at 76-77.  At least seven guns were kept in the house (the FBI recovered seven, according to the testimony of Special Agent Kevin Ashby).[8]  Id. at 77.  These weapons were made accessible to

---

[7]

In his objections, Hopkins reasserts the claim that he made at trial that the numerous guns found at the Lundy Drive address were registered to his father, a retired police officer.  The government submits that registration and ownership of these firearms are irrelevant. Access to firearms is what matters, and in this case, the defendant and his lieutenant had access.

[8]

The firearms and related materials were admitted as Exhibits 26-64.  Photos of the guns and ammunition were admitted as Exhibits SW-TH-000306 through SW-TH-000392.  These photo showed that the majority of the weapons (five of seven) were recovered were inside the premises on

Hopkins in case someone came to rob the house of drugs or money, so that Chavious and Hopkins could mount a defense.  Id. at 77-78.  This is the very definition of the use of a firearm in furtherance of a conspiracy.  Further, the placement of the loaded guns in the bushes was at Hopkins' instruction so that he and Chavious would have easy access to them.  Id. at 77-81.  While many of the guns in the house - a Mossberg pump shotgun, an AK-47, multiple pistols, including both semi-automatic and revolvers -  belonged to Alfred Hopkins, members of the conspiracy had access to them.  Id. at 87-94.  Therefore Hopkins clearly possessed the firearms in furtherance of the conspiracy and his claims to the contrary are false.   (See also, Exhibits SV-9 through SV-13, videotape admitted at trial.)

VII.    The Enhancement for Obstruction of Justice is Applicable.

There was substantial testimony in the record about the fact that Troy Hopkins knew he was wanted by the authorities and that there was a bench warrant for his arrest.  First, Hopkins' parents house was searched on August 1, 2006, by FBI agents.  Tr. October 25, 2007, a.m., pp. 20-21.  Agent Jesus Gomez spoke to Troy Hopkins on the telephone and told him that there was a bench warrant for his arrest.  Id. at 22.  Gomez identified himself as an FBI agent and told Hopkins that he was wanted, and that a judge had authorized his arrest.  Id. ("I told him he had a bench warrant").  Hopkins said he would call Agent Gomez back, but he never did.  Id.  After this call, Hopkins fled and went to a hotel room in Washington, DC. with Troy Chavious, and Doug Chittums (a.k.a. "White Boy").  Tr. October 11, 2007, a.m., pp. 30-34.  Hopkins told Chavious that he knew he had a warrant for his arrest, and he displayed a copy of the sealed Indictment to Chavious.  Id.  This is probably because Attorney Doug Woods claimed to represent Hopkins at the time, and a copy of the

_____

Lundy Drive, while only two of the firearms were recovered in the bushes.

Indictment in the instant case had been faxed to him by Assistant United States Attorney, S. Elisa Poteat. Hopkins told Chavious that he would eventually turn himself in, and that he was going to "go south" and get a "house in a female's name," presumably to avoid being captured . Id. This is in fact what Hopkins did.

Hopkins went to Georgia, where FBI agents stopped Oba Faruq, who denied knowing Hopkins. Later, Hopkins was located in Paramount, California, in an apartment building where he sometimes stayed in a unit leased by Sadie White, the mother of Tinesha Adams' brother, and was observed with Oba Faruq, the same woman stopped by the FBI in Georgia. Tr. October 24, 2007, p.m., pp. 88-91. At the apartment building, Deputy United Marshal Adrian Rolfe espied Hopkins on a video surveillance camera as he exited a car with a female, later identified as Oba Farouq. Id. Faye Baker, the manager of that apartment building, testified that she saw Hopkins in and around the building, in particular near the unit leased by Sadie White, in 2007. Tr. October 25, 2007, p.m. Obviously Hopkins was tipped off by someone in the building and he fled yet again. When Hopkins was finally arrested on May 19, 2007, at the Commerce Casino, he told the Marshals that they should know who he was. Tr. October 24, 2007, p.m., pp. 91-94.

Under U.S.S.G §3C1.1, app.n.4(e). Hopkins should receive an increase of two levels in his base offense for obstructing justice. The application notes set forth the circumstances under which this increase should apply, including application note 4, "Examples of Covered Conduct." Application note 4(e) states this increase applies for "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding." We would submit that the defendant knew that he had a bench warrant out for his arrest, meaning an order of a judge, and he deliberately fled to avoid having to go to trial. We believe that Hopkins

23

cannot credibly claim that he was just "avoiding arrest" as is referred to in application note 5(d) (increase does not apply when defendant "avoiding or fleeing from arrest"). The defendant was not just running from police officers on the street. He engaged in a well-orchestrated plan to try to avoid having to come before this Court for trial.

The defendant also refutes the government's assertion that he continued to sell PCP after the interception at Dulles Airport in May 2006. A witness testified that Hopkins that, after the FBI interdiction at Dulles, Hopkins switched his methods and began using buses to transport the PCP, that he had to increase the amount he paid the drug couriers. Tr. October 11, 2007, p.m. pp. 18-19.[9]

VIII.    Conclusion.

The defendant should be sentenced to a mandatory life sentence, and if not, he should receive a life sentence under the Federal Sentencing Guidelines.

---

[9]

The defendant also notes his health problems in his memorandum. The government is aware that the defendant has been shot in the past, and has sleep apnea. While he is fully deserving of a life sentence, we agree that he should be treated for these ailments while his in incarcerated.

24

*Wherefore*, we request that the defendant be sentenced accordingly,

Respectfully submitted,

JEFFREY TAYLOR
United States Attorney
Bar No. 498-610

_____/s/_____
S. Elisa Poteat
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20001
Bar. No. 420-604

_____/s/_____
Emory V. Cole
Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant on June 19, 2008.

_____/s/_____
S. Elisa Poteat
Assistant United States Attorney

Defense Counsel:
Mr. Cary Clennon
Attorney for Defendant Troy Hopkins
Clennon_law@comcast.net

25