Copies to: Judge
AUSA – Special Proceedings
Dft.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :
:
VS. : CRIMINAL NO. 06-227 (RBW)
:
TROY HOPKINS :
:

Accept for filing
Judge Walton
7/9/08

FILED
JUL 9 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

FILED
JUL - 9 2008
Clerk, U.S. District and
Bankruptcy Courts

### DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR OUTRAGEOUS GOVERNMENT MISCONDUCT AND NEWLY DISCOVERED EVIDENCE

**COMES NOW,** Defendant Troy Hopkins, moving Pro Se, comes before this Couort to request that the Court accepts this MOTION to Dismiss Indictment for outrageous Government Misconduct. Defendant respectfully moves this Court to dismiss this indictment. Defendant alleges that the Assistant United States Attorneys Elizabeth Poteat and Enoy Cole knowingly let Special Agent Timothy Errin and other FBI Agents engage in a pattern of deceitful and other conduct throughout the criminal investigation, Grand Jury proceedings, Pretrial proceedings, and throughout the trial in this case. Mrs. Poteat and Mr. Cole also allowed FBI agents to put PCP on the streets of the Washington Metropoilitan Area, and used trained and experienced Operational Informant Anoine Richards to extort drugs and money from the main target of this investigation, Darnell Jackson. The Defendant also alleges that the FBI did not turn over all of the PCP which was extorted from Jackson, and allowed the Operational Informant to sell the PCP. These acts of Prosecutorial and Outrageous Misconduct represents such a corrupt distortion of the truth-seeking function of the criminal investigation and is a violation of the Due Process Clause of the Fourth Amendment (see United States v. Russell, 411 U.S 423, 431 (1973); United States v. Barbera-Moreno, 951 F.2d 1089, 1091 (9th Cir. 1991)). The only Just Remedy is dismissal of the indictment, and at the very least, an evidentiary hearing.

A hearing must be ordered to redress the violation of Defendant Hopkins' Constitutional Rights to a fair trial (see Mooney v. Holohan, 294 U.S 103 (1985); Napue v. Illinois, 360 U.S 264 (1959); Brady v. Maryland, 373 U.S 83 (1963); Giglio v. United

1

States, 405 U.S 150 (1972); United States v. Bagley, 473 U.S 667 (1985); Strickler v. Greene, 527 U.S 263 (1999); Bank v. Dreike, 540 U.S 668 (2004).

## Statement of Facts

To further argue, show and prove these facts and evidence, Defendant Hopkins is requesting an evidentiary hearing on this motion, or the Court use its supervisory powers to dismiss this case. On the morning of March 9, 2006, the FBI started this alleged conspiracy by meeting with Operational Informant, Antoine Richards a/k/a Pops, and giving him the seed money in this alleged conspiracy, so that Mr. Richards could accompany his partner, Darnell Jackson on a courier operation and supply him with the start up purchase a gallon of PCP from Los Angeles. As a result, FBI agents met with CW-3 in the early morning hours to provide CW-3 with a vehicle equipped with interior audio and video recording equipment. Agents also provided CW-3 with $7,500 in $100 bills to be used to purchase a portion of the PCP which Darnell Anthony Jackson would be obtaining. The record clearly shows the FBI jump started this investigation. The following evening of March 10, 2006, Jackson and CW-3 concluded a successful courier operation flying back from Los Angeles to D.C. and meeting the courier and the PCP which was purchased, back at an associate of Jackson's apartment (Bernie Hargrove). During the ride from the airport to the associate (Hargrove's) apartment, Jackson discusses the whole methodology of his organization. He also describes to the informant how he dilutes his PCP and advises CW3 that he should dilute his half of the gallon also. When Jackson and CW3 gets to Bernie's apartment, CW3 claims in the record that Jackson took four (4) shampoo bottles and emptied them into a one gallon jug then separated a half a gallon for himself and a half for CW-3. CW-3 also reports to the agents that Jackson then sent slow to the store to get starter fluid so Jackson could begin to dilute his PCP. CW-3 claims once he got his half, he left to meet the agents leaving Jackson there with a half a gallon of PCP (see Affidavit Page 27; paragraph 57). Reliable sources say different, CW-3 was there while Darnell Jackson diluted his half turning it into 96 ounces, which adds an additional 32 ounces to the half of gallon. CW-3 did the same and turned in six ounces to the FBI and the agent allowed 32 ounces for CW-3. Page 27, paragraph 58: *"the liquid substance CW3 obtained from Darnell Anthony*

*Jackson was seized by the FBI and determined to be approximately 64 ounces. The substance was submitted to the DEA Mid-Atlantic Lab for quantities and quantitive analysis. The DEA Lab determined the substance of PCP with a purity of 55%"* The purity of percentage of the PCP was cut so low due to the dilution CW-3 put into the PCP to stretch it. CW-3 reported to the agents that he left Jackson with a half a gallon of PCP. Instead of the agents seizing the PCP, had they allowed Jackson to distribute the PCP to the streets of Suburban Maryland, Washington, D.C, and Virginia. In the record of this investigation, Agent Tim Ervin continuously makes assertion to point out how Jackson was broke at the time and that the FBI had to jump start Jackson by giving him $7,500. This money which came from the FBI was responsible for polluting the streets with 96 ounces of PCP from Jackson and 32 ounces from CW-3. So the FBI had distributed a gallon of PCP on the streets with Government money.

In addition to allowing drugs on the street, the FBI "got the ball rolling" for Jackson. Four days later, Jackson was able to go back out to L.A. to purchase more PCP. Flight records show Jackson made three trips after the FBI gave him the seed money on the 9th of March. Mrs. Poteat and Tim Ervin stated in Tim Ervin's Grand Jury testimonies that the flight records can determine how much PCP was being transported. They claim each trip with one courier equals one gallon and each trip with two couriers equal two gallons. Darnell Jackson went to L.A. using Keith Roots and Dominique Washington, and Mary Walker as couriers. On March 15, 2006, April 5 and April 17 all of 2006, he used two couriers for each of these trips. Since the Government states that each courier represents a gallon. Flight records show Jackson transported six gallons after March 9th operation. Jackson is on the record explaining how he dilutes 32 ounces of starter fluid to every half gallon. With these calculations, the FBI jump started Jackson to be able to distribute nine gallons of PCP, not including the first 96 ounces the FBI contributed to. The April 5th operation by Jackson was surveillanced by agents from the airport to Folgate Court address of Jackson's father. Defendant refers the Court to the affidavit page 29, paragraph 64: *"At approximately 5:53 p.m, FBI surveillance agents observed Darnell Jackson and Keith Roots arrive at 5808 Folgate Court in a Jaguar driven by Darnell Jackson. Both men went into the residence. Later that evening, the agents called*

*CW-3 to go over to 5808 Folgate Court to meet with Darnell Jackson. Upon entering that residence, CW-3 noted that Dominique Washington was in the home with Darnell Jackson and CW3 saw two empty 32 ounce plastic shampoo bottles drying in the kitchen sink. Darnell Jackson told CW3 that Dominique Washington had transported a gallon of PCP back to Washington".* Tim Ervin explains what was going on in July 25 Grand Jury testimony page 10, Line 23. The informant went over there and went inside and there was Keith Roots and Elijah Hall and Dominique Washington and Darnell Jackson. As soon as the informant sees the shampoo bottles he says *"What's the L.A courier doing here? I thought you and I were going to be partners. Obviously you are doing things without me."* That's when Jackson does what he does best, lie his way out of something. Jackson tells CW-3 *"Yea, I just had to run out there real fast and grab some but you know I got you next time".* CW-3 talks with Jackson for a minute then leaves and reports what went on and what he saw to the agents. Now the agents know there is a load of PCP in this house but they do not go in and seize the drugs, instead the allow Jackson to distribute another load of dangerous drugs to the streets. CW-3 was surveyed by agents entering and leaving the Foal Gate Court address but not one time was anything said about Jackson giving CW3 a half gallon until Dominique Washington a Government key witness testifies to CW3 coming over and Jackson feeling ashamed for being caught, gives him 2 shampoo bottles which equal a half. There was no half of gallon brought into evidence nor was it shown on the surveillance. Why the Government allowed CW3 to leave the Foal Gate Court house with PCP and did not seize it is beyond me. This evidence was not disclosed to the defendant's until trial and that is a Brady violation also. See October 18, 2007 A.m transcript, page 40, line 17 A.: *I don't know what the guy's name is, but, some heavy set guy-He was medium height, had short cut, came in, got some PCP from Darnell Jackson, but it wasn;t in little bottles, it was in shampoo bottles".* Q. Okay. A. *"Two shampoo bottles".* Dominique goes on to say after the guy picked up the two shampoo bottles he left. Poteat also asked her did she see anyone of the defendants at the house, she said no. For the CW3 to leave the house being surveillanced by the FBI and then meet with the agents right afterwards and the agents not have any evidence of the PCP is outrageous conduct. The record clearly shows that the CW3 was buying and obtaining PCP with and from Jackson and not turning it in to the FBI and the

4

FBI was allowing CW3 to keep the PCP as payment for his service, this is outrageous misconduct. Another instance where Outrageous Misconduct was used by the Government, when the FBI started extorting Darnell Jackson. May 23, 2006, FBI agents met with Operational Informant Antoine Richards (CW3) and gave him $14,000. This money was to be used to once again "jump start Jackson" because he was not doing so well financially at the time. Richards met with Jackson on the morning of the 23rd and gave him $10,000. During this time, Jackson informed Richards that he will soon receive some PCP. FBI Agents had the wire going and intercepted Jackson setting up a purchase from Tony Hilt, using the money the FBI gave him. First and foremost, Special Agent Tim Ervin deceives the courts, the Grand Jury, with testimony which he gave under oath stating that they could not tell if the money that was given to Jackson was used to purchase the PCP which was seized at Dulles Int'l Airport on the 24th of May. This is a blatant lie, the phone records clearly show that the entire week before the seizure, Jackson is begging Hilt to let him buy a gallon and for Hilt to front one with it. Hilt finally gives in. Ervin knowingly deceives the Court for two reasons, one, the Government wanted to contradict the defense's theory that all of the PCP that was seized in this case was brought with FBI money, two, the Government wanted to frame defendant Hopkins, making it look as if one of the two gallons belonged to him and the other belonged to Jackson strengthening the alleged conspiracy.

      Furthermore, the FBI is monitoring Jackson's phone and find out exactly what time the two gallons are to arrive at the airport. The FBI surveilled the girls picking up their luggage and seized the two gallons on the morning of the 24th, the day after the Government money was given to Jackson. The FBI sends their informant to Jackson after the seizure. The FBI sends their informant to Jackson after the seizure. Jackson was forced and pressured by the informant to pay the bill. Reliable sources were told by Jackson that Richards a/k/a Pops said *"I don't care what happened at the airport, I gave you $10,000, I want my shit, or my money back today"!* This caused Jackson to go out and swindle someone out of a half a gallon just to pay back the informant. Out of the 64 ounces that Jackson gave Richards. The FBI allowed Richards to keep 32 ounces and only turn 32 ounces for evidence. The following evening, reliable sources, who are ready

to testify met up with Richards and was shown two 16 ounce bottles of PCP. Richards inquired if they knew of anyone trying to buy the two 16 ounce bottles for a good price. Jackson left to go out town in a hurry trying to dodge the people he swindled the half of gallon of PCP from. The FBI put Jackson in a life threatening situation by using this mob tactic to intimidate Jackson into paying for drugs that they already seized. This tactic caused Jackson to owe the Los Angeles source of supply $10,000 and some other people $15,000 for the half gallon he got from them. The street term for what Jackson did is robbing Peter to pay Paul. The mob technique the FBI used is extortion which is used by street thugs on weak and helpless victims. The FBI schemed and planned this all along. By listening to the wiretap the previous couple of days they thought Tony Hilt was going to give Jackson two gallons if Jackson came up with $10,000 as a down payment on one. This is why the FBI gave Jackson the money. For $10,000, the Government seized two gallons of PCP from Jackson, and used their informant to extort an additional half gallon from Jackson. The FBI also allowed their informant to sell PCP throughout the investigation and reliable sources (who are in position to testify) say that Richards was distributing PCP up until he was recently incarcerated. This same source met with Antoine Richards on different occasions during this criminal investigation. The first incident was in March where the source met with Richards at the Sensations night club off of Lanham –Severn Road. During their meeting Richards showed the reliable source 32 ounces of PCP and stated that he just came back from Los Angeles earlier that night and he needed someone to test the PCP for him. The incident was in front of the Senate Inn. Source believes it was some time in April. On this occasion Richards was telling the reliable source to find someone who was trying to purchase some PCP and he would sell it to them dirt cheap. On this occasion, Richards showed the source a 16 ounce bottle of PCP. Richards told sources at the DC Jail that he got locked up for a gun and drugs. Richards was currently working for the FBI. This is an example of how he was and still is involved in illegal activity under the supervision of the Bureau. Defendant Hopkins cited numerous instances where Richards, while purporting to work as an informer, was allowed to compromise ongoing narcotics investigations. The crux of the defendants' points is that Richards was allowed to be a "double agent" using the cloak of police authority to cover his drug dealing. The Supreme Court has stated that it "may someday

be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the Government from invoking judicial process to obtain a conviction. United Stated v. Russell, 411 U.S 423, 431-32, 36 L.Ed.2d 366, 93 S.Ct. 1637 (1973); United States v. Gamble states that a defendant may not invoke the Due Process Clause, however, unless the Government's acts, no matter how outrageous, had a role in inducing the defendant to become involved in the crime. In the present case Jackson was induced by the Government. Jackson was broke and was given money to "jump start" this conspiracy.

The ninth Circuit has explained that "in the two cases in which federal appellate courts have squarely upheld an outrageous government conduct argument, the defendants would not have had the capacity to commit the crimes without the Government's assistance. United States v. Tomas, 706 F.2d 886, 891 (9th Cir. 1983); see also United States v. McCown, 711 F.2d 1441, 1449-50 (9th Cir. 1983). U.S v. Twigg was distinguished by explaining in that case the illegal activity began at Government investigation. Defendant Hopkins contends that the actions of the federal agents allowing their operational informant to extort drugs from Jackson, allow the informant to sell narcotics in the course of an undercover operation and allow Jackson to distribute PCP is outrageous misconduct either because such action offends the requirements of Due Process or requires judicial condemnation in the exercise of the courts' supervising power over the administration of criminal justice. Throughout this criminal investigation, AUSA Elisabeth Poteat and Emory Cole allowed the FBI to endanger the lives of millions of people just to continue this criminal investigation. The agents surveilled different couriers at the airport on different occasions boarding airplanes with these highly dangerous and flammable chemicals instead of seizing the PCP they allowed it to be flown across the United States. This is another example how the Government's overzealousness to obtain evidence was held higher than the safety of the public.

There are many more instances where the FBI's over-involvement in crime have reached a demonstratable level of outrageousness which should bar conviction that defendant Hopkins can go on with the cataclysmic actions of professional misconduct by

the Government attorneys, agents and detectives. With these violations of the Rules of Professional Conduct perjury and foul play at the very least, the Government should dismiss this case to save embarrassment, shame and further humiliation. The Court's refusal to grant the defendant an evidentiary hearing further hinders the defendant's ability to produce facts and evidence highlighting the Government's emaciated case.

### Relief Sought

Defendant is requesting the Courts to use its supervisory Power to dismiss this indictment or to give justice and allow the defendant an evidentiary hearing to prove these claims and accusations, so that Justice may be prevailed. The Defendant prays this Honorable Court to grant such relief, in Good Faith and in the Interest of Justice.

Respectfully Submitted,

/s/_____
    Troy Hopkins, Pro Se
    DCDC#314-893
    Central Detention Center
    1901 D Street, S.E.
    Washington, D.C. 20003

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing motion to Dismiss Indictment has been delivered U.S Mail to the Honourable Judge Reggie B. Walton, US District Court for the District of Columbia at 333 Constitution Avenue, NW, Washington, DC 20001; and the AUSA Elisabeth Poteat, U.S Attorney's Office at 555 4th Street, N.W., Washington, DC 20530, to make service, on this ___ day of _____, 2008.

Respectfully Submitted,

/s/_____
    Troy Hopkins

cc:
HONORABLE JUDGE REGGIE B. WALTON